NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-134-GFVT

DAVID ITHAMAR LYNCH                                                                          PLAINTIFF

VS:  **MEMORANDUM OPINION AND ORDER**

MARY OURISMAN, ET AL.                                                                     DEFENDANTS

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

David Ithamar Lynch, an individual who gives Prestonsburg, Kentucky, as the place of his residence, has filed a *pro se* civil rights complaint, claiming jurisdiction, *inter alia*, under 28 U.S.C. § 1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971),[1] and he has simultaneously applied to proceed *in forma pauperis*. He later supplemented the motion with additional financial information.

This matter is before the Court for initial screening.[2] 28 U.S.C. § 1915(e); *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

---

[1] Plaintiff also claims that his action "is a civil action authorized by 42 U.S.C. Section 1983, to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States." Since all of the defendants are federal employees, the Court construes the action as one brought under § 1331, federal question jurisdiction. *See Butz v. Economou*, 438 U.S. 478, 498-500 (1978) (according same degree of immunity to federal officials in Bivens actions as that allowed for state officials in Section 1984 actions).

[2] The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. § 1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is frivolous or malicious or fails to state a claim upon which relief can be granted.

CLAIMS

Plaintiff alleges that the named defendants (1) violated his First Amendment rights to peaceful assembly and free speech; (2) failed to adhere to the confidentiality requirement in 8 U.S.C. § 1202(f); (3) committed an illegal seizure of his person in violation of his Fourth Amendment rights; and (4) refused his request for documents under the Freedom of Information Act ("F.O.I.A."), 5 U.S.C.A. § 552.

DEFENDANTS

As the Defendants, the Plaintiff has named the following persons, all located in the United States Embassy/Consulate, in Bridgetown, Barbados: (1) Mary Ourisman, the Ambassador; (2) Clyde Howard, Jr., Counsel General; (3) Arend Zwartjes, Chief Immigration Officer; (4) Laurie Major, Deputy Consulate; and (5) Robert Starnes, Regional Security Officer. Lynch specifies that they are sued in their individual and official capacities.

RELIEF REQUESTED

The Plaintiff seeks injunctive, declaratory, and damage relief.

FACTUAL ALLEGATIONS

In his original motion to proceed *in forma pauperis*, which accompanied his complaint, Plaintiff Lynch has written that he is employed at the Eric C. Conn Law Complex, in Stanville, Kentucky, where his duties include "paralegal work and immigration representation." Record No. 2. As to the complaint itself, he has titled it a Civil Rights Complaint and he has attached a number of documentary exhibits. Record No. 1. The following is a summary of his factual allegations in these submissions.

The Plaintiff claims that he "was at all times relevant to this complaint acting as the legally authorized immigration representative for my clients." These clients included Mr. and Mrs. Eric C. Conn, as they pursued an I-130 Spousal Petition for Mrs. Conn's immigration into the United States. Her full name is Lizeth Marcella Suaza-Perez, and she is a native of Colombia. Lynch claims that the U.S. Department of State, Homeland Security and the National Visa Center had all screened, approved and issued the visa.

Nonetheless, Defendant Zwartjes allegedly denied Mrs. Conn's petition on June 4, 2007, case number BGN2007117002. In a vitriolic letter, which he wrote the next day to 4 of the 5 defendants herein (Ourisman, Howard, Zwartjes, and Major), Plaintiff Lynch challenged the Ambassador's credentials; criticized the I-130 decision; claimed that "the implications that the marriage is fraudulent are totally unfounded and solely subjective without any objective evidence to substantiate the allegations;" and asked for an investigation into the denial. Finally, he promised, "You have made my life very interesting and I plan to make all of yours very miserable. . . . You will regret the day you issued this decision." (Exhibit 2)

It was and is the Plaintiff's opinion, stated in the letter and in these pleadings, that the personnel at the U.S. Embassy in Bridgetown, Barbados, had made up their minds to deny the petition months in advance, for the reason that on behalf of his clients, he had earlier dared to ask members of the U.S. Senate and House of Representatives for assistance on the petition.

He claims that the embassy's first punitive reaction was in April, when Defendant Howard is alleged to have sent to the members of Congress letters "riddled with inaccurate information" on the case. Lynch has not seen the letters, however, as he has been denied copies thereof upon his F.O.I.A. request. According to the Plaintiff, on June 4th, the embassy took the

action of denying the I-130 for the same reason – to punish him for going to members of Congress to argue in behalf of the Conns. Attached to the instant complaint are copies of many more June letters and emails from Lynch on the topic of the alleged improper denial of the Conns' I-130 petition.

Presented with the complaint are several exhibits purportedly supporting the Plaintiff's civil rights claims, all of which are alleged to have arisen after the June 4th I-130 denial. In these exhibits and allegations, the Plaintiff presents his first claim, which is allegedly grounded in the First Amendment of the U.S. Constitution and a similar provision of the Barbados' Constitution (Exhibit 4), which guarantee the right to peacefully assemble.

Plaintiff Lynch alleges that he wrote to the Barbados government and the U.S. Embassy there to inform them that he would be coming to the embassy to distribute information and obtain signatures for a petition "requesting a formal investigation by the Inspector Generals Office into the abuse of power, policy, rule and procedure violations that the embassy is practicing." The local government allegedly gave its permission so long as his protest was peaceful, but Plaintiff did not receive a response from the embassy.

Plaintiff then decided to advertise his planned protest. He contends that the Bridgetown newspaper, the BARBADOS ADVOCATE, had accepted the advertisement, which was to run on June 8th. However, Lynch alleges, on June 11th, he discovered that the newspaper had not run it. In an attached affidavit, the woman who actually placed the ad for him swears that she spoke with the relevant newspaper employee, who told her that there were "orders to put the ad on hold from an outside agency." (Exhibit 18) The Plaintiff claims that the outside agency was the

Case: 7:07-cv-00134-GFVT  Doc #: 6  Filed: 08/01/07  Page: 5 of 8 - Page ID#: 70

embassy and the Defendants there thus censored him and violated his First Amendment rights of peaceful assembly and free speech.

Lynch also complains that while he was proceeding with these plans, "someone" posted a message on "youtube," and he knows that the "someone" was "the United States Government/U.S. Embassy" because the message referenced confidential information which only they and he knew. This is apparently his claim arising from 8 U.S.C. § 1202(f).

Plaintiff Lynch's next claim arose upon his attempt to enter the Barbados. He writes,

> . . . I was detained, incarcerated and deported at the request of the United States Embassy/Consulate. (Exhibit 1). They had requested that Barbados Authorities deny my admittance into the country. They alleged that I had made threatening/terroristic threats towards the embassy and staff. This could not be further from the truth. I did intend to state a "peaceful protest" . . . .

Record No. 1 at 3.

The above-referenced Exhibit 1 is a 2-page internet article, dated June 14, 2007, and attributed to the BARBADOS FREE PRESS. Plaintiff wrote half of the article, titled *Barbados Arrests, Jails and Deports U.S. Immigration Critic in 48 hours. . . What Efficiency! Barbados Media Reject Advertisements Or News Stories On this Incident.* Lynch describes his 48-hour detention by Barbados immigration officers and states his intention to sue the U.S. Embassy officials, the Plaintiff writing therein that

> [t]hey can now add the new charge of violation of my civil liberties to my cause. My clients are important and deserve a fair interview, but to deny my civil liberties is well just going too far. I will be seeking recourse in the U.S. Federal courts against the Ambassador Mrs. Mary Ourisman, Clyde Howard, Jr. Arend Zwartjes, Laurie Major and any and all other embassy employees responsible for this act.

Exhibit 1.  The authorship of the rest of the article is unknown.  However, it is sympathetic to Lynch.  The article closes with an appeal to the Plaintiff to send the advertisement which had been rejected by the BARBADOS ADVOCATE to the BARBADOS FREE PRESS, and it then invites other people to do the same.[3]

Two days later, on June 18, 2007, the Plaintiff filed the instant complaint and initial motion to proceed *in forma pauperis*.  In light of the contents of Plaintiff Lynch's submissions and this Court being otherwise advised,

It is **ORDERED** as follows:

(1)     Plaintiff Lynch's motion to proceed *in forma pauperis*, as amended [Record Nos. 2, 5], is **GRANTED**.

(2)     The Clerk in the divisional office in which the case lies shall prepare and issue summons for the following personnel in the United States embassy in Bridgetown, the Barbados, in their official and individual capacities:  Ambassador Mary Ourisman, Clyde Howard, Jr., Arend Zwartjes, Laurie Major, and Robert Starnes.

In addition to the summonses, the Clerk shall make 3 sets of copies of the summonses and mark one set to be served on the United States Department of State, another the United States Attorney General, and the third set to be served on the United States Attorney for the Eastern District of Kentucky.

(3)     The Divisional Clerk shall also prepare as many copies of the complaint as there are summonses and copies of summonses and any required USM Forms 285.  If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285

---

[3] The article gives barbadosfreepress@yahoo.com as its address.

regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(4) After the Divisional Clerk's office has prepared the summonses, USM Forms 285, complaint copies, copies of this Order, and/or any other documents necessary to effectuate service, a Deputy Clerk shall forward said documents, by certified mail, to the United States Marshal's office in Lexington, Kentucky.

(5) The Divisional Clerk shall enter the certified mail receipt into the instant record.

(6) The United States Marshal shall serve a summons, complaint copy, and copy of this Order on each named defendant for whom a summons has been prepared and shall serve copies of the same documents on the United States Attorney General and the United States State Department, both in Washington, D.C., and on the United States Attorney for the Eastern District of Kentucky, in Lexington, Kentucky, all service to be made by certified mail, return receipt requested.

(7) The United States Marshal shall make a return report to the Court of whether each summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(8) The plaintiff shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(9) For every further pleading or other document he wishes to submit for consideration by the court, the plaintiff shall serve upon each defendant, or, if appearance has

been entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel. If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

      This the 1st day of August, 2007.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge